## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **CHARLENE OLIVER,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. No.:** |
| | : | |
| **PROVIDENCE WATER SUPPLY** | : | |
| **BOARD and CITY OF PROVIDENCE,** | : | |
| **by and through its Treasurer,** | : | |
| **JAMES J. LOMBARDI, III,** | : | |
| **Defendants** | : | |

## COMPLAINT

### I. Introduction

This is an action brought by the Plaintiff seeking injunctive relief, attorney's fees and litigation expenses and other equitable relief, including back pay, as well as compensatory damages to remedy the unlawful discrimination in employment the Plaintiff suffered in violation of the Rhode Island Whistleblowers' Protection Act ("RIWPA"), R.I.G.L. §28-50-1, et seq.

### II. Parties

1.      The Plaintiff is a resident of the Town of Rehoboth, County of Bristol, Commonwealth of Massachusetts.

2.      Defendant City of Providence ("City") is a duly authorized and organized municipality pursuant to the laws of the State of Rhode Island and is sued by and through its Treasurer, James J. Lombardi, III, the official designated by state law, R.I.G.L. §45-15-5, to be named in a suit for relief against the City.

3.      Defendant Providence Water Supply Board ("PWSB") is a department of Defendant City and is governed by City policies and procedures.

### III. Jurisdiction

4.      This Court has jurisdiction over the Plaintiff's claims through diversity jurisdiction pursuant to 28 U.S.C.A. §1332(a) insofar as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is diversity of citizenship between the Plaintiff and the Defendants.

## IV. <u>Venue</u>

5.      Venue is proper in this Court insofar as a substantial portion of the events or omissions giving rise to the within claim occurred in the State of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.

## V. <u>Material Facts</u>

6.      At all times relevant hereto, Defendant PWSB acted pursuant to the authority vested in it by the City Charter, §1101(a)(3).

7.      At all times relevant hereto, Defendant PWSB acted as an agent of Defendant City.

8.      In January, 2001, the Plaintiff was hired by the Defendants as a Clerk at Defendant PWSB.

9.      At the time of her forced resignation and transfer from Defendant PWSB, the Plaintiff was employed by the Defendants as a Purchasing Agent.

10.     At all relevant times, the Plaintiff's job performance was satisfactory and met all of Defendants' legitimate expectations.

11.     During her employment, the Plaintiff reported to the Defendants a violation, which she knew or reasonably believed had occurred, of a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, and/or the United States.

12.     In May, 2015, the Plaintiff discovered that other employees at Defendant PWSB had utilized her company credit card to make fraudulent purchases that were unrelated to the

business of Defendant PWSB, including the on-line purchase of sunglasses, cell phones, and contact lenses.

13.     After discovering the fraudulent purchases, the Plaintiff contacted Bank of America ("BOA"), the credit card company, and reported the fraudulent activity and requested that the credit card be cancelled.

14.     The Plaintiff then reported the fraudulent purchases to her supervisor at Defendant PWSB, Elizabeth Paquin, PWSB Purchasing Manager.

15.     In response, Ms. Paquin told the Plaintiff, "[w]ho are you to call BOA?"

16.     The Plaintiff then told Ms. Paquin that she was compelled to contact BOA as the company credit card was issued to her.

17.     Defendant PWSB failed and/or refused to investigate or take any remedial action relative to the fraudulent purchases reported by the Plaintiff.

18.     In fact, as a result of reporting the unlawful conduct, the Plaintiff was formally reprimanded by Ms. Paquin because she was adamant that PWSB employees were stealing from the department.

19.     In September, 2015, the Plaintiff discovered that a management-level employee at PWSB utilized his wife's credit card to purchase dress shirts from Kohl's in the amount of $2,462.88 for employees and PWSB Board Members.

20.     After making this purchase, this management-level employee completed a purchase order in order to obtain reimbursement from Defendant PWSB.

21.     This management-level employee was prohibited from making this purchase with a personal credit card as it exceeded $500.00 and was not due to an emergency situation.

22.     This management-level employee was also required to obtain purchase bids from three (3) vendors prior to making the aforementioned dress shirt purchase.  He failed to do so.

23.     In addition, PWSB employees were required to purchase these dress shirts from Defendant PWSB.

24.     The Plaintiff believed that, if an employee paid for the shirt with cash, those monies were not deposited in a PWSB or City account and were kept by either PWSB employees for their own use.

25.     Furthermore, the members of PWSB Board were not required to pay for the dress shirts.

26.     Moreover, the management-level employee earned "Kohl's Cash" from the dress shirt purchase.  Under the "Kohl's Cash" program a customer will receive a $10.00 Kohl's Cash coupon for every $50.00 spent in a single transaction.

27.     This management-level employee failed to provide the "Kohl's Cash" coupons to Defendant PWSB and either he or his wife kept the "Kohl's Cash" for his or her own use.

28.     The Plaintiff reported this fraudulent activity to Ms. Paquin.  In response, Ms. Paquin told the Plaintiff that she was "lucky to have a job" and "if you don't like it, then bid out [to another City position]."

29.     The Plaintiff was also issued a verbal warning for insubordination for reporting the dress shirt purchases to her supervisor.

30.     In late 2017, Defendant PWSB proposed a new purchasing process.

31.     The Plaintiff reasonably believed that the new purchasing process was illegal insofar as it created a conflict of interest as the same individuals, who reviewed PWSB's

purchases—Ms. Paquin and Ms. Lourenco—were also the only individuals who reconciled those purchases at PWSB.

32.     Due to the unlawful purchasing process, the Plaintiff made a complaint, in person, to Defendant City's Associate Director of Purchasing and Defendant City's Finance Director, Lawrence Mancini.

33.     During this meeting, Mr. Mancini expressed concerns about Defendant PWSB's new purchasing process.

34.     Mr. Mancini thereafter contacted Mr. Caruolo about this issue and informed Mr. Caruolo about the meeting with the Plaintiff.

35.     On January 22, 2018, after complaining about the unlawful purchasing process, the Plaintiff was disciplined by her supervisors, Ms. Paquin and Peter Pallozzi, PWSB Deputy General Manager, because she "sought out the City's Associate Director of Purchasing and Finance Director, without having appointments, and for the purpose of reporting that the proposed new purchasing process was illegal.  You made no attempt to discuss this issue with me or anyone else from Providence Water, and departed from the workplace without authorization."

36.     During this time, Lynn Roberts, PWSB's Director of Personnel, told the Plaintiff that her actions were only being done to "excite a riot."

37.     Since 2015, the Plaintiff reported several instances of PWSB employees utilizing PWSB funds to purchase personal items.

38.     For example, in May, 2018, a management-level employee purchased a coat rack, sweeper, and bucket from Ann & Hope Outlet utilizing a company credit card.  These items were for his own personal use.

39.     After discovering these unlawful purchases, the Plaintiff reported such conduct to Defendant PWSB.

40.     Despite her complaints, Defendant PWSB failed and/or refused to investigate the Plaintiff's complaints and/or take any remedial measures.

41.     In June, 2018, a management-level employee purchased a tea kettle from Sur la Table utilizing a company credit card.  The tea kettle for his own personal use.

42.     The Plaintiff complained about this unlawful purchase to Ms. Paquin, Mr. Pallozzi, Rebecca Lourenco, PWSB's former Purchasing Supervisor, and Ms. Roberts.

43.     In response to her complaint, the Plaintiff was told, "If you don't like it; you should punch out and go home."  Despite this threat, the Plaintiff never left work.

44.     Beginning in 2015, the Plaintiff reported to Ms. Paquin that Ms. Lourenco was using PWSB funds to purchase personal items from Amazon, such as clothes and make-up.

45.     The Plaintiff also reported that Ms. Lourenco was utilizing PWSB funds to pay utility bills at her personal residence.

46.     Despite her complaints about Mr. Lourenco's unlawful conduct, Defendant PWSB failed and/or refused to investigate the Plaintiff's complaints and/or take any remedial measures.

47.     As a result, Ms. Lourenco continued misappropriating company funds until she left her position at Defendant PWSB in August, 2018.

48.     In August, 2018, Ms. Lourenco was arrested and criminally charged for, inter alia, fraudulent use of a PWSB credit card.

49.     Since 2015, the Plaintiff also regularly complained to Defendant PWSB that several PWSB employees were making personal purchases at various retail and on-line stores,

including, but not limited to, Amazon, Stop & Shop, Home Depot, Staples, Ann & Hope Outlet Shops, Open Season, and Michael's Florist.

50.     The Plaintiff reported that these purchases were unrelated to PWSB business and were a misappropriation of PWSB funds.

51.     During a meeting with Ms. Lourenco and another management-level employee at PWSB, the Plaintiff also complained that the management-level employee, in attendance at the meeting, often interfered with the vendor bidding process.

52.     During all relevant time periods, this management-level employee was aware that the purchase and procurement process for PWSB projects, including obtaining vendor bids, was conducted by the City's Board of Contract and Supply.

53.     As part of this bidding process, the City's Board of Contract and Supply advertises PSWB projects for bid and then vendors are permitted to submit sealed bids.

54.     Nevertheless, this management-level employee regularly interfered with this process and directly contacted vendors to request that they bid on certain projects at Defendant PWSB.

55.     The Plaintiff was reprimanded for complaining about the employee interfering with the City's bidding process.

56.     After complaining about the fraudulent or otherwise unlawful conduct at Defendant PWSB as detailed above, the Plaintiff was reprimanded by her supervisors on a daily basis and threatened to be terminated if she continued to claim that PWSB employees were "stealing" from the department or engaging in other unlawful activities.

57.     The frequent harassment by her supervisors resulted in the Plaintiff temporarily leaving her position at Defendant PWSB and transferring to a limited position in City Hall in June, 2018.

58.     This limited position ended in November, 2018 and the Plaintiff was then required to transfer back to Defendant PWSB.

59.     On December 11, 2018, the Plaintiff was issued a formal warning for making a "disruptive, offensive, and unacceptable comment in the office…[that]…everyone @ Providence Water is stealing."

60.     On January 3, 2019, because the Plaintiff continued to be reprimanded and threatened with termination after she regularly complained about unlawful conduct at the workplace, the Plaintiff was compelled to resign from her position at Defendant PWSB and to transfer to lower paying position within Defendant City.

61.     That the facts of this matter clearly establish that the Defendants discriminated against the Plaintiff in violation of the RIWPA.

62.     The Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the RIWPA insofar as the Defendants discriminated against the Plaintiff because she reported fraudulent or otherwise unlawful conduct to the Defendants and her supervisors.

63.     The acts and/or omissions of the Defendants as aforesaid were grossly negligent, reckless, deliberate, intentional, malicious, deceitful, wanton, willful, and/or in bad faith.

64.     As a proximate result of the Defendants' unlawful acts and/or omissions, including, but not limited to, those described herein, the Plaintiff suffered loss of income, as well as

employment benefits, damage to her business and personal reputation, mental and physical anguish, pain and suffering, and was otherwise injured and damnified.

## VI.  Prayers for Relief

**WHEREFORE**, the Plaintiff respectfully prays that this Court grant the following relief:

1.      a declaratory judgment that Defendants, in the manner described herein, unlawfully discriminated against the Plaintiff in violation of the Rhode Island Whistleblowers' Protection Act, R.I.G.L. §28-50-1, *et seq.*

2.      enjoining and permanently restraining the Defendants from violating the Rhode Island Whistleblowers' Protection Act, R.I.G.L. §28-50-1, *et seq.*

3.      award the Plaintiff back pay, including benefits and incremental increases, plus prejudgment interest thereon;

4.      award the Plaintiff compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus prejudgment interest thereon;

5.      award the Plaintiff reasonable attorney's fees and costs of litigation; and,

6.      such other and further relief as the Court deems just and proper.

## VII.  Demand for Jury Trial

The Plaintiff hereby demands a trial by jury on all counts so triable.

## VIII.  Designation of Trial Counsel

The Plaintiff hereby designates V. Edward Formisano, Esquire, Michael D. Pushee, Esquire, and Nicole J. Policastro, Esquire as trial counsel.

PLAINTIFF,
By her attorneys,
**FORMISANO & COMPANY, P.C.**

Dated: August 2, 2019          /s/ V. Edward Formisano
                               V. Edward Formisano (#5512)

                               /s/ Michael D. Pushee
                               Michael D. Pushee (#6948)

                               /s/ Nicole J. Policastro
                               Nicole J. Policastro (#9606)
                               100 Midway Place, Suite 1
                               Cranston, RI 02920-5707
                               (401) 944-9691
                               (401) 944-9695 (facsimile)
                               edf@formisanoandcompany.com
                               mpushee@formisanoandcompany.com
                               npolicastro@formisanoandcompany.com

## **CERTIFICATION**

I hereby certify that on the 2nd day of August, 2019, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System.

/s/ V. Edward Formisano